**RUSS THOMPSON MOTORS, INC.**

v.

**CHRYSLER CORPORATION.**

Civ. A. No. 76–277.

United States District Court,
D. New Hampshire.

Jan. 11, 1977.

Robert E. Hinchey, Burns, Bryant, Hinchey, Cox & Shea, Dover, N. H., for plaintiff.

David L. Nixon, Brown & Nixon, Manchester, N. H., for defendant.

## OPINION AND ORDER

BOWNES, District Judge.

This petition for a preliminary injunction was filed in the Superior Court for Strafford County, State of New Hampshire, on September 2, 1976. The defendant removed it to this court by petition filed September 21, 1976.

Jurisdiction is based on diversity of citizenship and amount in controversy.

Two hearings were held, one on December 15th and the other on December 23, 1976.

Injunctive relief is sought not only on the traditional grounds that the plaintiff faces immediate and irreparable injury without an adequate remedy at law, but also on the ground that the defendant violated the terms of N.H. RSA 357–B:4 III(c).

The essential facts can be briefly stated. The plaintiff corporation is operated by Rand Thompson. All of its stock is owned by his mother, Georgianna M. Thompson.

This Chrysler-Plymouth dealership started in 1931 under Rand Thompson's grandfather who operated it until his death in 1951. It was then carried on by his son, Rand Thompson's father, who died in February of 1970, and Rand Thompson has, for purposes of this case, operated it since that time.

The business relationship between the plaintiff under the management of Rand Thompson and the defendant has not been either a profitable or a happy one. In 1975 and 1976, the plaintiff consistently failed to meet the sales quotas for new cars set by the defendant and failed to submit monthly financial statements as provided for in paragraph (7)(A) of the Terms Sales Agreement. Exhibit 5. The failure to file financial statements by the plaintiff made it impossible for the defendant to determine if the plaintiff maintained a net working capital of $60,800 as required in paragraph (7)(C) of the Agreement.

On March 31, 1975, plaintiff and defendant executed a Term Sales Agreement. Exhibit 5. Paragraph (6) provided:

This arrangement will become effective on the date of execution hereof and, if not previously terminated as provided in Paragraph 21 of said Direct Dealer Agreement(s), will continue in effect for a period of twelve (12) months from said date, at which time this Agreement will terminate automatically without notice to or by either party.

In November of 1975, Joseph F. Prout, District Sales Manager for the defendant, informed Rand Thompson that the plaintiff had not lived up to the provisions of the Term Sales Agreement. Rec., Dec. 23, pp. 78–80.

On January 19, 1976, there was a meeting in Framingham, Massachusetts, at which Rand Thompson, his attorney, William Galanes, the regional zone manager, the assistant zone manager, and district sales manager for the defendant were present. At that meeting, Thompson was informed that the Term Sales Agreement would not be extended. After being asked if he would voluntarily terminate on a thirty-day notice rather than wait for a ninety-day termina-

tion (notice), Thompson declined to terminate voluntarily. Rec., Dec. 23, pp. 81–83.

No written termination notice was sent to the plaintiff prior to March 31, 1976. On April 21, Thompson asked Prout why he had not received the termination notice yet. Rec., Dec. 23, p. 98.

On July 9, 1976, a sixty-day termination notice was hand delivered to the plaintiff. Exhibit 1.

The issue is whether, under these facts, a preliminary injunction should issue. The criteria for resolving this are well established.

"The standards which should guide the decision to grant a preliminary injunction have been often stated. The movant must show a substantial likelihood of success on the merits, and that irreparable harm would flow from the denial of an injunction. In addition, the trial judge must consider the inconvenience that an injunction would cause the opposing party, and must weigh the public interest as well." *Quaker Action Group v. Hickel*, 137 U.S.App.D.C. 176, 421 F.2d 1111, 1116 [1969]. *Pauls v. Secretary of Air Force*, 457 F.2d 294, 298 (1st Cir. 1972).

In addition to the usual two requirements of irreparable harm and probability of success on the merits, I must also consider the effect and meaning of the statute. N.H. RSA 357–B:4 III(c) provides that it shall be unlawful for a manufacturer

to terminate or cancel the franchise or selling agreement of any such dealer without due cause. The non-renewal of a franchise or selling agreement, without due cause, shall constitute an unfair termination or cancellation, regardless of the terms of provisions of such franchise or selling agreement. Such manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division, or wholesale branch or division, or officer, agent or other representative thereof shall notify a motor vehicle dealer in writing of the termination or cancellation of the franchise or selling agreement of such dealer at least sixty days

before the effective date thereof, stating the specific grounds for such termination or cancellation; and such manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division, or wholesale branch or division, or officer, agent or other representative thereof shall notify a motor vehicle dealer in writing at least sixty days before the contractual term of his franchise or selling agreement expires that the same will not be renewed, stating the specific grounds for such nonrenewal in those cases where there is no intention to renew the same, and in no event shall the contractual term of any such franchise or selling agreement expire without the written consent of the motor vehicle dealer involved, prior to the expiration of at least sixty days following such written notice. During said sixty day period, either party may in appropriate circumstances petition a court to modify said sixty day stay or to extend it pending a final determination of such proceedings on the merits. The court shall have authority to grant preliminary and final injunctive relief and such petition shall be entitled to a speedy trial.

This section of the statute makes it unlawful to terminate or cancel the franchise or selling agreement of any automobile dealer without due cause and imposes specific notice requirements on a manufacturer seeking to terminate an automobile dealership.

■ Based on the evidence presented, which I limited to the years 1975 and 1976, I find that there was due cause for termination. The evidence establishes conclusively that the plaintiff had not met the requirements of paragraphs (7)(A), (B), and (C) of the Agreement.

■ The next question is whether the defendant complied with the notice requirements of the statute. The type of selling agreement we have here cannot be terminated unless the manufacturer gives written notice to the dealer at least sixty days before its expiration date. This was not done. The Term Sales Agreement, therefore, was not "terminated automatically" on March 31, 1976, as called for in paragraph (6). The statute operated to extend the Agreement indefinitely.

When there is no definite contractual period or when a contract is to be terminated before the end of a definite term, the statute requires that a manufacturer notify a dealer in writing of the termination or cancellation "at least sixty days before the effective date thereof, stating the specific grounds for such termination or cancellation."

■ I find that the July 9 letter, Exhibit 1, met all the statutory requirements of notice, including the required statement of "the specific grounds" for cancellation.

■ While there may be irreparable harm to the plaintiff if the dealership is terminated, there is not a probability of success on the merits. Indeed, the contrary is indicated.

The motion for preliminary injunction is denied.

The following specific rulings are made as to pending motions:

1. All exhibits marked for identification at the hearing shall remain so marked.

2. The plaintiff's motion to strike exhibits and offer of proof is granted.

3. The plaintiff's motion to amend petition for preliminary injunction is granted.

4. The defendant's motion for reference to a Master is denied.

SO ORDERED.